UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

IN RE:

HARAS SANTA ISABEL, INC

Debtor

CASE NO. 18-07077 (MCF)

Chapter 11

SECOND SUPPLEMENT TO PLAN OF REORGANIZATION
SUBMITTING DISCOUNTED PAYOFF,
SETTLEMENT AND RELEASE AGREEMENT

TO THE HONORABLE COURT:

COMES NOW Debtor, Haras Santa Isabel, Inc., through its undersigned counsel, and supplements its plan of reorganization (the "Plan") filed on December 13, 2018, as follows:

1. As set forth in the Plan, as supplemented by Debtor's Statement Regarding Requirements of Section 1129(a) (Docket No. 75), Class 1 under the Plan consists of the allowed Claim of Abbey Reo Corp ("Abbey") for $8,938,559.47, partially secured by first mortgages on Debtor's real properties with a value of $1,983,000, who is to be paid in full on the Effective Date by a payment of $700,000 from the sale of substantially all of Debtor's assets to Productores Agricolas del Sur, Inc., for $850,000. The balance of Abbey's claim for $8,238,559.47 is dealt with in the Plan under Class 4 Holders of Allowed General Unsecured Claims, Abbey being entitled to vote thereunder, while not receiving any dividends.

2. In turn Class 4 under the Plan consists of the claims of Holders of Allowed General Unsecured Claims against Debtor, including Abbey's deficiency claim for $8,238,559.47, with voting rights and no dividends; the claim of Bautista Cayman Asset Company ("Bautista Cayman") for $1,532,656.85, Economic Development Bank for Puerto Rico's claim for $1,333,054.62; and Banco Santander de Puerto Rico's claim for $279,200.00. Considering these claims, Class 4 General Unsecured Claims total $14,147,917.43.

3. Abbey and Bautista Cayman have agreed to the treatment set forth in paragraphs 1 and 2 above. Debtor, as Borrower, its president María Teresa Baragaño Amadeo and the estate of Enrique Ubarri Blanes as Guarantors, on one part, and Abbey on the other, upon the confirmation of the Plan will execute the Discounted Payoff, Settlement and Release Agreement (the "Agreement") attached as Exhibit A hereto which is in accord with the Plan and its implementation.

4. The Plan further provides in its Article VIII (8.1) that the unexpired executory contracts or leases reflected on Debtor's Schedule G, existing as of the filing of Debtor's Chapter 11 petition will be rejected as of the Effective Date, which is supplemented hereby to provide that the entry of the Confirmation Order[1] by the Bankruptcy Court shall constitute approval of such rejection pursuant to the provisions of sections 365 (b)(2) and 1123 (b)(2), of the Bankruptcy Code and that if the rejection of any unexpired executory contract or lease results in a claim for damages by the other party to such contract or lease, any claim for such damages shall be forever barred and will not be enforceable against Debtor or its properties, agents successors or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for Debtor on or before thirty (30) days following the Confirmation Date, Debtor retaining the right to object to any rejection damages claims filed.

WHEREFORE, it is respectfully requested that as part of the confirmation of the Plan, the Agreement be approved by the Court.

CERTIFICATE OF SERVICE: I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Office of the United States Trustee, and all CM/ECF participants and by regular mail postage prepaid to the members of the estate of Enrique Ubarri Blanes, María Teresa Baragaño Amadeo at Washington Street No. 69, San Juan, P.R. 00907-2106; Mrs.

---

[1] Capitalized Terms have the meaning set forth in the Plan.

María Teresa Ubarri Baragaño at Washington Street No. 69, San Juan, P.R. 00907-2106; Mrs. María Magdalena Ubarri Baragaño Cacique Street No. 2018, Ocean Park, San Juan, P.R. 00911at and to Enrique Ubarri Baragaño at P.O. Box 430821, Miami, Florida 33243.

San Juan Puerto Rico, this 7th day of May 2019.

s/ CHARLES A. CUPRILL-HERNANDEZ
USDC-PR 114312
Charles A. Cuprill, P.S.C., Law Offices
356 Fortaleza Street, Second Floor
San Juan, PR  00901
Tel.:  787-977-0515
Fax:  787-977-0518
E-Mail:  ccuprill@cuprill.com

EXHIBIT A

# DISCOUNTED PAYOFF,
# SETTLEMENT AND RELEASE AGREEMENT

This **DISCOUNTED PAYOFF, SETTLEMENT AND RELEASE AGREEMENT** (hereinafter, this "Agreement") is entered into as of the ____ day of May, 2019 (the "Execution Date"), by and among: (i) **Haras Santa Isabel, Inc.**, a corporation duly organized and existing under the laws of the Commonwealth of Puerto Rico, represented in this act by its authorized representative María Teresa Baragaño Amadeo (hereinafter the "Borrower"); (ii) the estate of Enrique Ubarri Blanes, and (iii) María Teresa Baragaño Amadeo, of legal age, single, property owner, and resident of San Juan, Puerto Rico (hereinafter jointly, the "Guarantor" and, collectively with the Borrower, the "Loan Parties"); (iii) and **Abbey REO PR Corp**, an exempt company duly organized and existing under the laws of the Cayman Islands (the "Creditor"). The Creditor and the Loan Parties shall be hereinafter collectively referred to as the "Parties".

## RECITALS

**WHEREAS**, the Borrower and Centro Hipotecario de Puerto Rico, Inc., a subsidiary of Doral Financial Corporation (hereinafter, "Original Creditor") entered into those certain loan documents more particularly described in **Exhibit A** attached hereto and made a part hereof (collectively with any and all other agreements, financings statements, documents, instruments, amendments, restatements or other modifications related thereto, the "Loan Documents");

**WHEREAS**, pursuant to the Loan Documents, Original Creditor granted to the Borrower certain loans in the original principal amounts of $5,000,000.00 on June 27, 2003 ("Loan");

**WHEREAS**, to secure payment of the Loan, Enrique Ubarri Blanes and María Teresa Baragaño Amadeo, then husband and wife, as the Guarantors, gave their personal guaranties to respond jointly and severally for the payment of their loan obligations and a mortgage on their personal property, as described in Exhibit A;

**WHEREAS,** Creditor acquired all rights, title and interests of Original Creditor in and to the Loan through agreement executed with the Original Creditor;

**WHEREAS,** on December 4, 2018 (the "Petition Date"), the Borrower commenced a voluntary chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the District of Puerto Rico (the "Bankruptcy Court") under Case Number 18-07077 (the "Bankruptcy Case");

**WHEREAS**, on December 13, 2018, the Borrower filed a plan of reorganization (the "Plan") and disclosure statement in the Bankruptcy Case under docket numbers 12 and 13, respectively;

**WHEREAS**, the Loan Parties acknowledge and accept that the total amount of principal, interest, fees and other amounts due and owing by the Loan Parties to the Creditor under the Loan Documents are, as of the Petition Date, as follows (hereinafter, the "Current Debt"):

| Creditor | Abbey REO PR Corp. |
|---|---|
| Proof of Claim No. | POC 23 |
| Principal | $4,459,760.53 |
| Interest | $3,884,597.20 |
| Fees and Other Amounts | $507,035.20 |

1

EXHIBIT A

| Total | $8,938,559.47 |
|---|---|

**WHEREAS**, the Loan Parties have offered to deliver to the Creditor, through the Plan, the amount of **SEVEN HUNDRED THOUSAND DOLLARS ($700,000.00)** as a discounted payoff of all obligations of the Loan Parties to the Creditor under the Loan Documents, including, but not limited to, principal, interest, fees, costs, expenses and other amounts payable to the Creditor under the Loan Documents (collectively, the "Obligations"); and

**WHEREAS**, the Creditor is willing to accept from the Borrower the amount of **SEVEN HUNDRED THOUSAND DOLLARS ($700,000.00)**, through the Plan, as a discounted payoff of the Obligations, under the terms and conditions set forth in this Agreement;

**NOW, THEREFORE**, in consideration of the premises and mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

**Section 1.** **Recitals.** The Parties acknowledge and agree that the Recitals set forth in this Agreement constitute an integral part of this Agreement, as if set forth in full herein.

**Section 2.** **Definitions.** As used herein, the following terms shall have the following meanings:

Agreement. This Agreement, together with all exhibits and schedules hereto, as it may be amended, modified, restated, varied, extended or otherwise supplemented from time to time.

Bankruptcy Case. Shall mean the voluntary chapter 11 bankruptcy proceeding commenced by the Borrower in the Bankruptcy Court under case number 18-07077.

Bankruptcy Court. Shall mean the United States Bankruptcy Court for the District of Puerto Rico.

Borrower. Has the meaning ascribed thereto in the Preamble.

Closing. The payment to, and receipt by, the Creditor of the Discounted Payoff Amount, in same day available funds, and the satisfaction of the other closing conditions set forth in Section 9 of this Agreement.

Closing Date. The date when the Closing occurs, as set forth in Section 9 of this Agreement.

Collateral. Any and all property (real or personal) that is subject to a Lien granted to secure the Obligations.

Creditor. Has the meaning ascribed thereto in the Preamble.

Creditor Released Matters. Has the meaning assigned to that term in Section 5 hereof.

Creditor Released Parties. Has the meaning assigned to that term in Section 5 hereof.

Current Debt. Has the meaning ascribed thereto in the Recitals.

EXHIBIT A

Confirmation Order. The entry of a final and unappealable order, by the Bankruptcy Court, confirming the Plan and approving this Agreement.

Discounted Payoff Amount. The sum of **SEVEN HUNDRED THOUSAND DOLLARS ($700,000.00)** to be delivered to the Creditor by the Loan Parties on the Closing Date as satisfaction in full of all the Obligations, except for the Surviving Obligations.

Execution Date. Has the meaning ascribed thereto in the Preamble.

Governmental Authority. Any court, board, agency, commission, office or other authority of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, Commonwealth of Puerto Rico or otherwise) whether now or hereafter in existence.

Guaranty. The Continuing and Unlimited Guaranty subscribed by the Guarantor to guarantee the Obligations, as more particularly described in **Exhibit A** attached hereto and made a part hereof.

Indemnified Loss. Has the meaning assigned to that term in Section 6 hereof.

Insurance Claim. Any and all claims made or that may be made under the Insurance Policy.

Insurance Company. Means Mapfre Praico Insurance Company.

Insurance Policy. That certain force-placed insurance policy No. 54-CP-200005675 issued by the Insurance Company over Mortgaged Property I, II, III, IV and V.

Insurance Claims Proceeds. Any and all proceeds, distributions, or amounts paid or disbursed at any time in relation to the Insurance Policy and any Insurance Claim.

Lien. With respect to the Mortgaged Properties or any other real or personal property of the Loan Parties, any mortgage, lien, pledge, assignment, encumbrance, charge or security interest in, on or of such Mortgaged Properties or other real or personal property of the Loan Parties.

Loan. Has the meaning ascribed thereto in the Recitals.

Loan Documents. Has the meaning ascribed thereto in the Recitals.

Loan Parties. Has the meaning ascribed thereto in the Preamble.

Mortgaged Properties. Shall mean (i) Property number 1,157 recorded at page 140 of volume 152 of Coamo, Registry of the Property of Puerto Rico, Section of Barranquitas ("Mortgaged Property I"), (ii) Property number 562 recorded at page 60 of volume 93 of Santa Isabel, Registry of the Property of Puerto Rico, Section of Guayama ("Mortgaged Property II"), (iii) Property number 1486 recorded at page 275 of volume 192 of Coamo, Registry of the Property of Puerto Rico, Section of Barranquitas ("Mortgaged Property III"), (iv) Property number 3747 recorded at page 246 of volume 402 of Juana Díaz, Registry of the Property of Puerto Rico, First Section of Ponce ("Mortgaged Property IV"), (v) Property number 13,089 recorded at page 67 of volume 232 of Coamo, Registry of the Property of Puerto Rico, Section of Barranquitas, which responds for $650,000 ("Mortgaged Property V") and (vi) property number 9,214 recorded in the Registry of the Property of Puerto Rico, Section of Santurce Norte, at page 220 of volume 232 of San Juan I ("Mortgaged Property VI"), all together with any buildings, structures, fixtures and all items of personal property situated thereon.

3

EXHIBIT A

Obligations. Any and all obligations of the Loan Parties to the Creditor under the Loan Documents, whether now existing or hereafter arising, including, but not limited to, principal, interest, fees, costs, expenses and other amounts payable to the Creditor under the Loan Documents.

Obligor Released Matters. Has the meaning assigned to that term in Section 5 hereof.

Original Creditor. Has the meaning ascribed thereto in the Recitals.

Parties. Has the meaning ascribed thereto in the Preamble.

Person. Any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership or other entity.

Release Termination Events. Has the meaning assigned to that term in Section 5 hereof.

Releasing Loan Parties. Has the meaning assigned to that term in Section 5 hereof.

Surviving Obligations. The indemnification obligations of the Loan Parties under the Loan Documents that, by their express terms, are intended to survive satisfaction of the indebtedness of the Loan Parties under the Loan Documents.

**Section 3.** **Satisfaction of Obligations.** The Creditor covenants and agrees with the Loan Parties that, subject to the terms and conditions hereof, the Creditor will accept the Discounted Payoff Amount from the Loan Parties, or any other Person instructed by the Loan Parties, in full satisfaction of all the Obligations, except for the Surviving Obligations.

**Section 4.** **Insurance Claims Proceeds**. As a material inducement for the Creditor to enter into this Agreement, and as a further condition for the Closing of this transaction, the Loan Parties, hereby acknowledge, agree, covenant and warrant that (a) the Loan Parties shall have no right or claim to or under the Insurance Policy, the Insurance Claim or any Insurance Claims Proceeds (or any benefit derived therefrom), all of which shall be sole and absolute property of the Creditor, and (b) that the Creditor shall fully retain, preserve and be entitled to: (i) any and all rights, privileges, awards and any other monetary benefits related to the Insurance Policy, the Insurance Claim and/or the Insurance Claims Proceeds, (ii) prior or subsequent to the Closing, enter upon and inspect the Mortgaged Properties I-V with any adjusters, insurance agents or other persons related to the Insurance Claim, all of which are hereby voluntarily and unequivocally accepted and agreed to by the Loan Parties; (iii) in the Creditor's sole and absolute discretion, exercise any and all legal or equitable remedies to collect on the Insurance Claim and/or settle the Insurance Claim.

The Loan Parties hereby covenant and agree to cooperate with the Creditor in connection with any matters related to the Insurance Policy or the Insurance Claim, including, but not limited to cooperating and assisting the Creditor in any litigation relating to the Insurance Policy or the Insurance Claim or in any insolvency proceeding commenced by or against the Insurance Company. As such, if the Loan Parties receive any amount or correspondence related to the Insurance Claims Proceeds or the Insurance Claim, then Loan Parties shall immediately, but not later than three (3) days after receipt, deliver such amount (duly endorsed or with the corresponding assignment) or correspondence to Creditor.

EXHIBIT A

Moreover, as an additional material inducement for the Creditor and the Loan Parties to enter into this Agreement, the Parties hereby covenant, stipulate and agree that the Creditor shall have no obligation to repair or cause the repair of any damage or destruction to the Mortgaged Properties I-V, or to reimburse the Loan Parties for any such repairs, even if such damage or destruction is related to the Insurance Claim, all of which is hereby assumed in full by and will be the sole responsibility of the Loan Parties, and all of which is hereby accepted by the Loan Parties.

The Loan Parties further acknowledge and agree that they have no right to collect any Insurance Claims Proceeds received by the Creditor in connection with any Insurance Claim related to the Mortgaged Properties I-V and that the proceeds of any Insurance Claim shall be completely excluded from the Creditor's calculation of the indebtedness discharged or forgiven as a result of this Agreement, as required pursuant to the requirements set forth in Administrative Determination No. 16-14 issued by the Puerto Rico Department of Treasury on November 7, 2016 and the provisions of Section 1031.01(b)(10) of the Puerto Rico Internal Revenue Code of 2011, as amended, and/or Section 108 of the Federal Internal Revenue Code of 1986, as amended.
.

**Section 5.** **Releases.** Effective upon the occurrence of the Execution Date, each of the Loan Parties, on behalf of themselves and on behalf of, and intending to legally bind, their respective parents, subsidiaries, affiliates, employees, officers, directors, agents, representatives, shareholders, successors, heirs and assigns (collectively, the "Releasing Loan Parties") irrevocably and unconditionally releases and forever discharges Creditor, Capital Crossing Puerto Rico, LLC, the Original Creditor and each and all of their subsidiaries, parents, and affiliates, and each of their respective employees, agents, representatives, consultants, attorneys, fiduciaries, servants, officers, directors, partners, servicers, predecessors, successors and assigns, and all persons acting by, through, under or in concert with any of the aforesaid persons or entities (collectively, the "Creditor Released Parties"), from any and all actions and causes of action, judgments, executions, suits, debts, claims, demands, liabilities, obligations, damages and expenses of any and every character, known or unknown, direct and/or indirect, at law or in equity, of whatsoever kind or nature, whether heretofore or hereafter arising, for or because of any act, omission, negligence or breach of duty by any of the Creditor Released Parties prior to and including the date of execution hereof, and in any way directly or indirectly arising out of or in any way connected to the Loan, the Mortgaged Properties I-V, this Agreement and/or the Loan Documents, including, without limitation, claims relating to any settlement negotiations, any theory of lender liability or the like, or any claims relating to any alleged right of redemption of any Loan Party regarding the Loan and the transfer of the same to the Creditor including, without limitation, any redemption rights under Article 1425 of the Puerto Rico Civil Code (collectively, the "Creditor Released Matters").

In furtherance of the foregoing release, the Releasing Loan Parties covenant and agree never to institute or cause to be instituted, or continue prosecution of, or assist, any suit or other action or proceeding of any kind or nature against any of the Creditor Released Parties, by reason of, or in connection with, any of the Creditor Released Matters.

Effective upon the Closing Date, and subject to the non-occurrence of any Release Termination Events, the Creditor hereby releases and forever discharges the Loan Parties from and against any and all causes of action, suits, debts, Liens, obligations, liabilities, claims, demands, damages, judgments, losses, orders, penalties, costs and expenses, of any kind or character, including, but not limited to, attorneys', professional or para-professional fees, of any kind or nature whatsoever, known or unknown, direct or indirect, suspected or unsuspected, fixed or contingent, liquidated or unliquidated, arising at law or in equity, of whatsoever kind or nature, which the Creditor has, owns, holds or claims to have, own or hold, or at any time heretofore has had, owned, held or claimed to have had, owned or held, against any of the Loan Parties, arising from, based upon or related to, whether directly or indirectly: (i) the Obligations and

5

the transactions relating thereto; (ii) the Loan Documents; (iii) any and all other agreements, documents or instruments referenced herein, in any Loan Document, or related hereto or thereto; or (iv) any default under any of the Loan Documents (collectively, the "Obligor Released Matters"); provided, however, that the Loan Parties shall not be released from the Surviving Obligations.

Any of the following events or occurrences (each, a "Release Termination Event" and, collectively, the "Release Termination Events") shall terminate and void the Creditor's release of the Loan Parties: (i) any of the Loan Parties has made any misrepresentations or omissions of disclosure of assets, collateral, liabilities or material information in any of the Loan Parties' respective financial statements and reports delivered by the Loan Parties to the Creditor, or to their legal and financial counsel, in connection with the negotiation and execution of this Agreement; (ii) any of the Loan Parties has concealed or assisted in concealing any assets or collateral from the Creditor in any of the reports or documents delivered to the Creditor prior to the date hereof, (iii) the occurrence of either of the events described in subsections (A) and (B) of the penultimate paragraph of this Section 5, (iv) the breach of any of the Loan Parties' warranties and representations set forth in Section 8 of this Agreement, or (v) non-payment of the Discounted Payoff Amount and/or any of the Loan Parties failure to comply with each and all of the terms and conditions of this Agreement, (vi) the Loan Parties failure (at any time, whether now or in the future) to permit the Creditor (or any representative) to enter upon and access the Mortgaged Properties in connection with the Insurance Claim, or (vii) that any of the Loan Parties makes any claim or seeks any compensation or payment in connection with the Insurance Claim, the Insurance Claims Proceeds and/or the Insurance Policy. on or prior to the Closing Date.

Further, upon the occurrence of a Release Termination Event, at any time, then, in such event, and without any requirement for notices or other action, (i) the releases granted by the Creditor herein with respect to the Loan Parties, shall be rendered null and void, and without any legal effect, (ii) the Creditor's agreement to accept the Discounted Payoff Amount in satisfaction of the Obligations due under the Loan Documents shall be null and void, (iii) the Creditor shall have available, against the Loan Parties, all remedies available under the Loan Documents, this Agreement, at law or in equity, and (iv) each of the Loan Parties agrees to pay to the Creditor the full amount of the Obligations, as liquidated damages. The Loan Parties acknowledge and agree that it would be difficult or impossible to determine with absolute precision the amount of damages that would or might be incurred by the Creditor as a result of the occurrence of any Release Termination Event, and that such liquidated damages are in lieu of actual damages, are the Parties' reasonable estimates of fair compensation for the losses to the Creditor that may reasonably be anticipated from the occurrence of such Release Termination Event and do not constitute a penalty.

In furtherance of the foregoing, and for the avoidance of doubt, none of the provisions contained in this Agreement is intended or shall be construed as releasing the Loan Parties from any obligations or liabilities arising under this Agreement, including, but not limited to, the Surviving Obligations, and their respective representations, warranties and covenants set forth herein, which Surviving Obligations, representations, warranties and covenants are intended to survive the Closing.

In addition, this Section 5 and the conditional release granted by the Creditor hereunder shall have no force or effect, and all of the Obligations of the Loan Parties under the Loan Documents shall continue to be effective and be automatically reinstated and/or reinstituted against the Loan Parties, without any action on the part of the Creditor, all as if the release granted pursuant to this Agreement and this Section had not been made: (A) if any Loan Party files a voluntary petition, other than the Bankruptcy Case, under the United States Bankruptcy Code within ninety-one (91) days of the Closing Date; or (B) in the event any suit or other proceeding is instituted or filed by or on behalf of any Loan Party, or any creditor of any Loan Party, that seeks to avoid or invalidate any of the transactions contemplated hereby, including any suit or other proceeding that seeks a determination that any portion of the Discounted Payoff Amount

EXHIBIT A

is a "preferential transfer", "voidable preference", "fraudulent conveyance" or "fraudulent transfer" or other "avoidance" action of any type with respect to the Discounted Payoff Amount. In such event, each Loan Party stipulates and agrees that, to the extent that any payment or any part thereof is subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, receiver or any other party under any debtor relief proceedings or equitable cause, then, to the extent of such payment received, the Obligations intended to be satisfied with the Discounted Payoff Amount shall be revived and continue to be in full force and effect, as if such payment or proceeds had not been received by the Creditor, and all rights, Liens, and remedies available to the Creditor under the Loan Documents, this Agreement, at law or in equity with respect to the Loan Parties, including any rights with respect to the Collateral, shall be automatically reinstated and continue to be in full force and effect.

The provisions of this Section 5 shall survive the Closing Date and the delivery by the Loan Parties of the Discounted Payoff Amount.

**Section 6. Indemnification.** The Loan Parties herein further agree to defend, indemnify and hold harmless all of the Creditor Released Parties from and against all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, and reasonable costs and expenses, incurred, suffered, sustained or required to be paid by a Creditor Released Party by reason of, or resulting from the Loan, the Loan Documents, the Discounted Payoff Amount, the Mortgaged Properties or a breach by any of the Loan Parties of any of their representations, warranties, covenants and obligations under the Loan Documents or this Agreement (each, an "Indemnified Loss"). In any investigation, proceeding or litigation related to a possible or asserted Indemnified Loss which, if adversely determined against any of the Creditor Released Parties, would result in an Indemnified Loss, or the preparation therefor, the Creditor Released Parties shall be entitled to select their own counsel and, in addition to the foregoing indemnity, the Loan Parties agree to promptly pay the reasonable fees and expenses for such counsel upon demand.

The Loan Parties hereby further agree to defend, indemnify and hold harmless each of the Creditor Released Parties from and against all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by any of the Creditor Released Parties by reason of, or resulting from, the filing by any of the Loan Parties of an insolvency or bankruptcy proceeding or becoming subject to an involuntary insolvency or bankruptcy proceeding.

Notwithstanding any provision to the contrary provided for in this Agreement, it is agreed and understood that the indemnification obligations of the Loan Parties contained in this Section 6 shall not be subject to the limit amount or the liquidated damages clause set forth in Section 5 of this Agreement.

The provisions of this Section 6 shall survive the Closing Date and the payment by the Loan Parties of the Discounted Payoff Amount.

**Section 7. Certain Agreements.** Once the Creditor has received confirmation that the Discounted Payoff Amount has been received via wire transfer to the account indicated by the Creditor or that the manager's check delivered at Closing to the Creditor in the amount of the Discounted Payoff Amount has cleared, and subject to satisfaction of the other conditions precedent to the Closing, the Creditor will notify the Loan Parties that the following documents are available for collection (which shall not include any deeds of cancellation of any of the mortgage notes or mortgages that form part of the Collateral, which deeds of cancellation, if so elected by the Loan Parties, shall be at the Loan Parties' sole cost and expense): (i) all promissory notes subscribed in respect to the Obligations under the Loan Documents, as more particularly described in **Exhibit A** attached hereto and made a part hereof, duly

7

stamped or marked as "cancelled" and endorsed to maker without any recourse, warranty or representation, express, implied or by operation of law, of any kind or nature whatsoever; (ii) all mortgage notes described in **Exhibit A** attached hereto and made a part hereof, endorsed to maker without any recourse, warranty or representation, express, implied or by operation of law, of any kind or nature whatsoever; and (iii) the Guaranty.

**Section 8. Loan Parties' Representations and Warranties.** The Loan Parties hereby represent and warrant to the Creditor the following:

(i) Each of the Loan Parties, including the representative for the estate of Enrique Ubarri Blanes on the estate's behalf, is authorized to enter into, and perform its obligations under, this Agreement, including, but not limited to, the releases set forth in Section 5 of this Agreement and the indemnifications set forth in Section 6 of this Agreement, the agreement to pay the Discounted Payoff Amount and the required deliveries at Closing, and, to the extent required for such authorization, each of said parties has sought and received any and all necessary consents or other approvals, including, but not limited to, all necessary corporate approvals and any necessary approvals of any Governmental Authority.

(ii) The Loan Parties, as applicable, are entities duly organized, validly existing and in good standing under the laws of the Commonwealth of Puerto Rico, and have all necessary power and authority to own their properties, to conduct their businesses as presently conducted and as proposed to be conducted and to enter into and perform their obligations under this Agreement.

(iii) The execution, delivery and performance by the Loan Parties of this Agreement, and the consummation of the transactions contemplated hereby, have been duly authorized by all necessary or required legal action, and do not violate, conflict with or result in any breach or contravention of any provision of law, statute, rule or regulation to which any of the Loan Parties is subject, or any judgment, order, writ, injunction, license or permit applicable to any of the Loan Parties or, as applicable, the organizational documents of the Loan Parties, or any agreement or other instrument binding upon any of the Loan Parties, or affecting their property, including, but not limited to, the Collateral.

(iv) This Agreement has been duly executed and delivered by each of the Loan Parties and constitutes a legal, valid and binding obligation of each of the Loan Parties, enforceable in accordance with its respective terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other laws relating to, or affecting generally, the enforcement of creditors' rights, or by general principles of equity.

(v) The execution, delivery and performance by the Loan Parties of this Agreement, and the consummation of the transactions contemplated hereby, do not require any approval or consent of, or filing with, any Governmental Authority, other than those already obtained or made.

(vi) There are no actions, suits, proceedings or investigations of any kind pending or threatened against any of the Loan Parties before any court, tribunal or Governmental Authority, which, if adversely determined, would, in any case, question or impair, in any way, the validity of this Agreement or any action taken or to be taken pursuant hereto.

(vii) No representation or warranty made by any of the Loan Parties to the Creditor in this Agreement, or in any agreement, instrument, document, certificate, statement or letter furnished to the Creditor, or to its legal and financial counsels or advisors, by or on behalf of any of the Loan Parties, and no other information previously furnished in writing by any of the Loan Parties to the Creditor, or said counsels or advisors, contains any statement of a material fact or omits to state a material fact necessary

8

in order to make the statements contained therein, in light of the circumstances in which they were made, not misleading.

(viii) The financial statements of the Loan Parties, and the other tax returns, financial information and reports delivered to the Creditor or to its legal and financial counsels and advisors prior to the Closing Date: (a) present fairly the financial condition of the Loan Parties, as of the dates thereof, and the results of their operations; (b) disclose all material liabilities, direct or contingent, of the Loan Parties, as of the dates thereof; and (c) were prepared in accordance with Generally Accepted Accounting Principles (GAAP) consistently applied. None of the Loan Parties: (a) has made any material misrepresentations or omissions of disclosure of assets, Collateral, liabilities or material information of any of the Loan Parties in such financial statements and reports delivered by the Loan Parties to the Creditor, or to its legal and financial counsels, in connection with the negotiation and execution of this Agreement; or (b) has concealed or assisted in concealing any assets or Collateral from the Creditor in any of the reports or documents delivered to the Creditor prior to the Closing Date.

(ix) None of the Loan Parties has any defenses, offsets, claims or counterclaims of any nature, whether liquidated or unliquidated, now or hereafter existing, matured or unmatured, direct or indirect, against the Creditor or the Creditor Released Parties, directly or indirectly related to the Obligations or the Loan Documents, and any and all such defenses, offsets, claims and counterclaims are hereby expressly and forever waived and released by each Loan Party.

**Section 9.** **Closing.** The Closing shall occur on the date, at the time and in the manner mutually agreed by the Parties, following the satisfaction or waiver of the conditions set forth in this Agreement. The following are the conditions to Closing:

(i) The Discounted Payoff Amount shall have been remitted to the Creditor by wire transfer to the account indicated by the Creditor or by means of a manager's check that has cleared payable to the Creditor in the amount of the Discounted Payoff Amount;

(ii) The Creditor shall have delivered to the Loan Parties a notification including instructions on time and place for the Loan Parties to collect the documents set forth in Section 7 of this Agreement;

(iii) The Loan Parties shall have delivered to the Creditor a Certificate of Corporate Resolutions of the Borrower, evidencing said entity's authority to enter into this Agreement and consummate the transaction described herein; and

(iv) The Confirmation Order shall have been entered approving the Plan and this Agreement.

Upon satisfaction of all of the foregoing conditions (hereinafter, the "Payoff Effective Time"), the Closing shall be deemed to have occurred and: (i) all outstanding indebtedness (including, but not limited to, principal, interest and fees) and other Obligations of the Loan Parties under, or relating to, the Loan Documents shall be deemed paid and satisfied in full and irrevocably discharged, terminated and released, except for the Surviving Obligations and as provided in Section 5 of this Agreement; (ii) all security interests and Liens granted to, or held by, the Creditor in any Collateral as security for such indebtedness shall be forever and irrevocably released and discharged, except as provided in Section 5 of this Agreement; and (iii) the Loan Documents shall terminate and be deemed cancelled and of no further force or effect, except as provided in Section 5 of this Agreement or as otherwise provided herein.

**Section 10.** **Confidentiality**. Each of the Loan Parties hereto and each of their respective partners, subsidiaries and related affiliates, and all Persons acting by, through, under or in concert with any of the Loan Parties, shall keep confidential the terms of this Agreement and shall not disclose the

terms hereof to any other Person or entity, except for any disclosure as may be required under applicable law or by a court or Governmental Authority with jurisdiction, such as the Bankruptcy Court. Nothing herein shall prevent any Party from disclosing such information to its accountants or tax or legal advisors, so long as such Persons agree to maintain the confidentiality provisions of this Section 10 (subject to the qualifications and exceptions to confidentiality obligations set forth herein).

**Section 11.** **Time is of the Essence.** Time is of the essence with regards to the performance of the obligations of the Loan Parties under this Agreement.

**Section 12.** **Counterparts.** This Agreement may be executed by each Party on a separate counterpart, each of which, when so executed and delivered, shall be deemed an original, but all of which, taken together, shall constitute one and the same instrument. In proving this Agreement, it shall not be necessary to produce or account for more than one such counterpart signed by the Party against whom enforcement is sought. In addition, the Parties may execute this document and evidence such execution by either PDF or facsimile, and each shall be binding and enforceable on such Parties.

**Section 13.** **Governing Law.** This Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Puerto Rico, and the Parties hereby submit themselves to the jurisdiction of the courts of the Commonwealth of Puerto Rico which may be selected by the Creditor for the resolution of any disputes which may arise in connection with this Agreement.

**Section 14.** **Good and Adequate Consideration.** Each of the Parties hereby acknowledges and agrees that it has received good and adequate consideration for entering into this Agreement.

**Section 15.** **Notices.** Any notice, request, demand or other instrument authorized or required to be given or furnished under this Agreement shall be made in writing and shall be given as set forth in the Loan Documents to the following addresses:

If to the Loan Parties:

María Teresa Baragaño Amadeo
Washington #69
San Juan, P.R. 00907

With copy to
Charles A. Cuprill, P.S.C. Law Offices

356 Fortaleza Street, Second Floor
San Juan, P.R. 00901
Attention: Charles A. Cuprill, Esq.
Fax: _(787)-977-0518

If to the Creditor:

Abbey REO PR Corp.
c/o Capital Crossing Puerto Rico, LLC
221 Ponce de León Avenue
12th Floor, Suite 1204
San Juan, Puerto Rico 00917
Attention: Juan Crespo

EXHIBIT A

With copy to:

Marini Pietrantoni Muniz LLC

250 Ave. Ponce de Leon
Suite 900
San Juan, PR 00918
Attn. Luis C. Marini

E-mail: lmarini@mpmlawpr.com

**Section 16.** **Rights Cumulative; Waivers.** Except to the extent otherwise provided herein, the rights of the Parties under this Agreement are cumulative and may be exercised as often as any Party considers appropriate. The rights of any of the Parties hereunder shall not be capable of being waived, modified or amended other than by an express waiver, modification or amendment in writing executed by the Party against whom enforcement is sought. Failure to exercise or any delay in exercising any of such rights also shall not operate as a waiver or variation of that or any other such right. Defective or partial exercise of any of such rights shall not preclude any other or further exercise of that or any other such right. No act or course of conduct or negotiation on the part of any Party shall in any way preclude such Party from exercising any such right or constitute a suspension or any variation of any such right.

**Section 17.** **Construction.** Unless the context otherwise requires, singular nouns and pronouns, when used herein, shall be deemed to include the plurals of such nouns or pronouns, and pronouns of one gender shall be deemed to include the equivalent pronouns of the other gender.

**Section 18.** **No Third-Party Beneficiaries.** No Person, firm or other entity, other than the Parties hereto and the Creditor Released Parties, shall have any rights or claims under this Agreement or otherwise be entitled to be a third party beneficiary hereof.

**Section 19.** **Integration.** This Agreement sets forth the entire agreement and understanding of the Parties with respect to the specific matters agreed to herein and the Parties acknowledge that no oral or other agreements, understandings, representations or warranties exist with respect to this Agreement or with respect to the obligations of the Parties under this Agreement.

**Section 20.** **Rule of Construction.** This Agreement shall not be construed more strictly against one Party than against the other, merely by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that all Parties hereto have contributed substantially and materially to the preparation of this Agreement.

**Section 21.** **Headings.** The headings contained in this Agreement are inserted for convenience of reference only and shall not affect the meaning or interpretation of this Agreement or any provision hereof.

**Section 22.** **Amendment.** No amendment or other modification of this Agreement shall be effective except pursuant to a written agreement executed by the duly authorized representatives of each of the Parties.

**Section 23.** **Successors and Assignees.** This Agreement shall be binding upon, and inure to the benefit of, the successors and permitted assignees of the Parties; provided, however, that none of the Loan Parties can assign any of their respective rights or obligations under this Agreement to any third

party without the Creditor's prior written consent, which consent may be withheld or denied by the Creditor in its sole discretion.

**Section 24.** <u>**Further Assurances.**</u> Each Party further agrees to: (i) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments; and (ii) take, or cause to be taken, all such other and further actions, as the other Party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement.

**Section 25.** <u>**Fees and Expenses**</u>. The Loan Parties shall pay for all legal and other costs and expenses incurred in connection with the preparation, negotiation, execution and delivery of this Agreement and all related agreements, instruments or other documents, and with the consummation of the Closing, including those incurred by the Creditor.

**Section 26.** <u>**Execution Capacity**</u>. The Loan Parties are executing this Agreement in their respective and corresponding capacities as borrowers and/or guarantors under the Loan Documents, as more specifically provided for in the Loan Documents, on behalf of themselves, and intending to legally bind their corresponding subsidiaries and related affiliated entities. Each of the Persons executing this Agreement represents and warrants to the Creditor that such Person is duly authorized to execute this Agreement on behalf of the Party as to which such Person is a signatory.

**Section 27.** <u>**Joint and Several**</u>. All of the obligations, covenants, representations and warranties of the Loan Parties under this Agreement shall be joint and several (*solidaria*) obligations, covenants, representations and warranties of the Loan Parties and shall survive the Closing Date.

**Section 28.** <u>**Voluntary Agreement**</u>. The Loan Parties hereby acknowledge that they are or have had the opportunity to be represented by legal counsel of their choice, are fully aware of the terms contained in this Agreement and have voluntarily and without coercion or duress of any kind entered into this Agreement and the documents executed in connection with this Agreement. The Loan Parties further acknowledge and represent that they are fluent in English, and have understood the totality of the contents, provisions and covenants of this Agreement.

**Section 29.** <u>**Negation of Partnership.**</u> Nothing contained in this Agreement will be deemed to create a partnership or joint venture between any Loan Party and the Creditor, or between the Creditor and any other Party.

**Section 30.** <u>**Severability.**</u> If any clause or provision of this Agreement is determined to be illegal, invalid or unenforceable under any present or future law by the final judgment of a court of competent jurisdiction, the remainder of this Agreement will not be affected thereby. It is the intention of the Parties that, if any such provision is held to be illegal, invalid or unenforceable, there will be added in lieu thereof a provision as similar in terms to such provision as is possible and be legal, valid and enforceable.

**Section 31.** <u>**Survival.**</u> All representations and warranties of the Loan Parties contained in this Agreement and in the documents required hereunder will survive the Closing Date and the other transactions contemplated by this Agreement.

**[Signature page follows]**

EXHIBIT A

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed and delivered as of the date first above written.

_____
**Haras Santa Isabel, Inc.**
**Borrower**


By:_____
Name: María Teresa Baragaño Amadeo
Title: Authorized Representative



_____
**Estate of Enrique Ubarri Blanes, as Guarantor**

**By:** _____
**Name:** _María Teresa Baragaño Amadeo
**Title:** _Authorized Representative



_____
**María Teresa Baragaño Amadeo, as Guarantor**



_____
**Abbey REO PR Corp, as Creditor**


By: _____
Name: _____
Title: Authorized Signatory

13

**EXHIBIT A**

**Loan Documents**

1. Loan Agreement dated June 27, 2003, executed by and between the Borrower, Centro Hipotecario de PR, Inc, Doral Financial Corporation and Enrique Ubarri blanes and María Teresa Baragaño Amadeo in the amount of $5,000,000.00 authenticated under affidavit number 11,370 of Notary Public Carlos M. García Rullán (hereinafter, the "Loan Agreement I").

2. Promissory Note dated December 30, 2004 executed by the Borrower in favor of Doral Bank in the principal amount of $5,000,000.00 (not notarized).

3. Promissory Note dated July 31, 2008 executed by the Borrower in favor of Doral Bank in the principal amount of $800,000.00, authenticated under affidavit number 6,024 of Notary Public Joseorlando Mercado Gely.

4. **Mortgage note** payable in favor of Centro Hipotecario de Puerto Rico, or to its order, in the principal amount of $5,000,000, due on demand, authenticated under affidavit number 11,376 of Notary Public Carlos M. García Rullán (hereinafter, the "Mortgage Note I") and secured by the Deed of Mortgage I (as defined below).

5. Deed of Mortgage Number 19 (hereinafter, the "Deed of Mortgage I") executed by and between the Borrower and Centro Hipotecario de Puerto Rico, Inc. on June 27, 2002 before Notary Public Carlos M. García Rullán, in the principal amount of $5,000,000, constituted over the properties listed below:

    a. Property number 1,157 recorded at page 140 of volume 152 of Coamo, Registry of the Property of Puerto Rico, Section of Barranquitas, which responds for $250,000.

    b. Property number 562 recorded at page 60 of volume 93 of Santa Isabel, Registry of the Property of Puerto Rico, Section of Guayama, which responds for $2,100,000.

    c. Property number 1486 recorded at page 275 of volume 192 of Coamo, Registry of the Property of Puerto Rico, Section of Barranquitas, which responds for $1,750,000.

    d. Property number 3747 recorded at page 246 of volume 402 of Juana Díaz, Registry of the Property of Puerto Rico, First Section of Ponce, which responds for $250,000.

    e. Property number 13,089 recorded at page 67 of volume 232 of Coamo, Registry of the Property of Puerto Rico, Section of Barranquitas, which responds for $650,000.

6. Deed of Mortgage Number 37 (hereinafter, the "Deed of Mortgage II") executed by Enrique Ubarri Blanes and María Teresa Baragaño Amadeo on July 5, 2001 before Notary Public Manuel L. Correa Márquez, in the principal amount of $500,000.00, constituted over property number 9,214 recorded in the Registry of the Property of Puerto Rico, Section of Santurce Norte, at page 220 of volume 232 of San Juan I (hereinafter, the "Property 9,214").

7. Deed of Mortgage number 74 (hereinafter, the Deed of Mortgage III") executed by Enrique Ubarri Blanes and María Teresa Baragaño Amadeo on December 5, 2001 before Notary Public

Manuel L. Correa Márquez, in the principal amount of $300,000.00, constituted over property 9,214.

8. Deed of Mortgage Number 10 (hereinafter, the "Deed of Mortgage IV") executed by Enrique Ubarri Blanes and María Teresa Baragaño Amadeo on June 30, 2005 before Notary Public Erasmo Reyes Peña, in the principal amount of $200,000.00 constituted over Property 9,214.

9. Security Pledge Agreement (hereinafter, the Pledge Agreement I") dated August 15, 2007 by and between the Borrower and the Lender authenticated under affidavit number 3, 016 of Notary Public Juan C. Salichs Pou, whereas the following mortgage note was pledged as guaranty for the Loan Agreement II:

    a. Mortgage Note payable to Bearer, or to its order, int eh principal amount of $500,000.00, due on demand, authenticated under affidavit number 18,824 of Notary Public Manuel Correa Calzada (hereinafter, the "Mortgage Note II")

10. Security/Pledge Agreement (hereinafter, the "Pledge Agreement II") dated July 31, 2008 by and between the Borrower and the Lender authenticated under affidavit number 6,026 of Notary Public Joseorlando Mercado Gely, whereas the following mortgage note was pledged as guaranty fo the Loan Agreement III:
    a. Mortgage Note payable to Bearer, or to its order, in the principal amount of $300,000.00, due on demand, authenticated under affidavit number 19,300 of Notary Public Manuel Corre aCalzada (hereinafter, the "Mortgage Note III") and secured by the Deed of Mortgage II.

11. Pledge Agreement (hereinafter, the "Pledge Agreement III") dated June 30, 2005 by and between Enrique Ubarri Blanes and María Teresa Baragaño Amadeo in favor of the Lender, authenticated under affidavit number 1,913 of Notary Public Erasmo Reyes Peña, whereas the following mortgage notes were pledged as guaranty for the Loan Agreement I:
    a. Mortgage Note payable to the bearer, or to its order, in the principal amount of $200,000.00 due on demand, authenticated under affidavit number 1,912 of Notary Public Erasmo Reyes Peña (hereinafter the "Mortgage Note IV") and secured by the Deed of Mortgage III.

12. UCC-a Financing Statement with filing number 2007041714 in connection with Pledge Agreement I.

13. UCC-1 Financing Statement with filing number 2008025893 in connection with Pledge Agreement II.

14. Continuing and Unlimited Guaranty dated August 15, 2007 executed by Enrique Ubarri Blanes and María Teresa Baragaño Amadeo and authenticated under affidavit number 3,017 of Notary Public Juan C. Salichs Pou.

15. Ratification of Guaranty Letter dated July 31, 2007 executed by Enrique Ubarri Blanes and María Teresa Baragaño Amadeo and authenticated under affidavit number 6,025 of Notary Public Joseorlando Mercado Gely.